THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| RAYWARE LIMITED,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>NEW CREATIONS BRANDS,<br><br>　　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [16] DEFENDANT'S MOTION TO DISMISS OR IN ALTERNATIVE MOTION TO TRANSFER**<br><br>Case No. 2:23-cv-00355-DBB-DAO<br><br>District Judge David Barlow |

In this case, Plaintiff Rayware Limited ("Rayware") alleges that Defendant New Creations Brand, LLC ("NCB") has infringed its trademark and committed other business torts.[1] Before the court is NCB's motion to dismiss for lack of personal jurisdiction, and in the alternative, to transfer the case.[2] For the following reasons, the court grants in part and denies in part NCB's motion.

## BACKGROUND

The Amended Complaint alleges that Rayware is an English company with its principal place of business in the United Kingdom,[3] whereas NCB is a limited liability company organized under Georgia law with its principal place of business in Georgia.[4] The gravamen of the Amended Complaint is that Rayware owns a federally registered trademark—the TYPHOON

---

[1] *See* First Am. Compl. ("Am. Compl.") ¶¶ 38–67, ECF No. 15.
[2] Def.'s Second Mot. and Mem. to Dismiss Compl. for Lack of Personal Jurisdiction or in the Alternative Mot. to Transfer to N. Dist. of Ga. ("Def.'s Mot."), ECF No. 16.
[3] Am. Compl. ¶ 1.
[4] *Id.* ¶ 2.

1

trademark—that Rayware "has been using the TYPHOON trademark in connection with cookware and other related products,"[5] and that NCB "is using, and is planning to use the [TYHPOON trademark] in connection with marketing, making, selling, offering for sale, and/or importing goods that are directly related to the goods that" Rayware provides.[6]

The Amended Complaint alleges that NCB's "website advertises products" using the TYPHOON trademark, that the website is "accessible to Utah residents" and "permits Utah residents to purchase products" and "have those products delivered directly to the state of Utah."[7] Indeed, "[u]pon information and belief, NCB has delivered, and continues to deliver, products bearing the [TYPHOON trademark] to consumers within the state of Utah, with the knowledge that the effects of such will be felt in the state of Utah."[8] Likewise, "[u]pon information and belief, NCB has engaged in extensive nationwide advertising . . . including advertisements targeting residents of the state of Utah in particular."[9]

NCB contests these allegations. In a prior motion to dismiss,[10] NCB submitted a declaration from its CEO, Mr. Charles Lovern, IV, stating that it has made no sales of an allegedly infringing product to "a Utah resident or business."[11] However, alongside its opposition to NCB's motion, Rayware submitted a declaration from a legal secretary who works for the law firm representing it.[12] She purchased an allegedly infringing product from NCB's website on October 10, 2023 from her home in Utah, and the product was delivered to her home

---

[5] Am. Compl. ¶ 11; *see also id.* ¶¶ 12–16; TYPHOON, Registration No. 2406990.
[6] *Id.* ¶ 17; *see also id.* ¶ 18.
[7] *Id.* ¶¶ 22–25.
[8] *Id.* ¶ 27.
[9] *Id.* ¶ 29.
[10] This prior motion was mooted due to the filing of the Amended Complaint. *See* ECF No. 24.
[11] Decl. of Charles Lovern, IV ("1st Lovern Decl."), ¶ 6, ECF No. 13-1.
[12] *See* Decl. of Kimberly Briggs ("Briggs Decl."), ECF No. 17-2.

in Utah.[13] This declaration post-dates the filing of this action, as well as the Amended Complaint.[14] Finally, on reply, NCB submits a second declaration from Mr. Lovern, in which Mr. Lovern declares that as of the date of the filing of Rayware's Amended Complaint, no sales of an allegedly infringing product were made to a Utah resident or business.[15]

NCB filed the present motion on September 27, 2023,[16] and the motion was fully briefed on November 22, 2023.[17]

## STANDARD

For purposes of a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "[a] district court has discretion to resolve such a motion in a variety of ways—including by reference to the complaint and affidavits, a pre-trial evidentiary hearing, or sometimes at trial itself."[18] "The Plaintiff bears the burden of establishing personal jurisdiction over the defendant."[19] If the court holds an evidentiary hearing, the plaintiff must prove personal jurisdiction by a preponderance of the evidence.[20] However, if the court resolves the motion without holding an evidentiary hearing "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."[21] "The plaintiff may make this prima facie showing

---

[13] *Id.* ¶¶ 2–8.
[14] *See* Compl., ECF No. 2 (filed May 30, 2023); Am. Compl. (filed September 13, 2023).
[15] Decl. of Charles Lovern, IV ("2nd Lovern Decl.") ¶ 6, ECF No. 18-1.
[16] Def.'s Mot.
[17] *See* Pl.'s Opp'n to Def.'s Second Mot. and Mem. to Dismiss Compl. for Lack of Personal Jurisdiction or in Alternative to Transfer to N. Dist. of Ga. ("Pl.'s Opp'n"), ECF No. 17; Def.'s Reply to Opp'n to Def.'s Second Mot. and Mem. to Dismiss Compl. for Lack of Personal Jurisdiction or in Alternative to Transfer to N. Dist. of Ga. ("Def.'s Reply"), ECF No. 18; Pl.'s Obj. to New Evidence in Def.'s Reply to Opp'n to Def.'s Second Mot. and Mem. to Dismiss Compl. for Lack of Personal Jurisdiction or in Alternative to Transfer to N. Dist. of Ga. ("Pl.'s Objection"), ECF No. 19; Def.'s Response to Pl.'s Objection to New Evidence in Def.'s Reply to Def.'s Second Mot. and Mem. to Dismiss Compl. for Lack of Personal Jurisdiction or in Alternative to Transfer to N. Dist. of Ga. ("Def.'s Response to Objection"), ECF No. 23.
[18] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).
[19] *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).
[20] *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997).
[21] *OMI Holdings*, 149 F.3d at 1091.

by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[22] The court must accept the factual allegations of the complaint as true "to the extent they are uncontroverted by the defendants' affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor[.]"[23] And "[i]n order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[24]

## DISCUSSION

### I. Personal Jurisdiction

A federal court determines personal jurisdiction over a defendant in a federal question case through application of the following test: (A) "whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant" and (B) "whether the exercise of jurisdiction comports with due process."[25]

### A. Long-Arm Statute

The relevant provision authorizing service of process is Federal Rule of Civil Procedure 4, which in turn provides that service of process establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where

---

[22] *Id.*
[23] *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988) (quoting *Behagen v. Amateur Basketball Ass'n of the U.S.*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985)).
[24] *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).
[25] *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).

the district court is located."[26] Accordingly, the court turns to Utah's long-arm statute, which reads:

> [A]ny person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to:
>
> (1) the transaction of any business within [Utah]; [and]
>
> (2) contracting to supply services or goods in [Utah.][27]

The Utah Code provides that this provision, "to ensure maximum protection to citizens of [Utah], should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[28] The court will assume for the purposes of this discussion that Utah's long-arm statute has been satisfied.[29]

### B. Due Process

"Personal jurisdiction can be acquired through either general jurisdiction or specific jurisdiction."[30] "A court with general jurisdiction may hear *any* claim against [a] defendant, even if all the incidents underlying the claim occurred in a different state,"[31] but general jurisdiction is

---

[26] *See* Fed. R. Civ. P. 4(k)(1)(A). Rayware does not invoke any other basis for service of process; they do not suggest that service was made pursuant to a federal statute authorizing nationwide service of process. *Cf. Klein*, 786 F.3d at 1318. The court is not aware of any such statute applicable to claims for federal trademark infringement. *Cf. Burger King*, 471 U.S. at 468–71.
[27] Utah Code § 78B-3-205; *see also id.* § 78B-3-202(1) ("The words 'any person' mean any individual, firm, company, association, or corporation."); *id.* § 78B-3-207 ("Only claims arising from acts enumerated in this part may be asserted against a defendant in an action in which jurisdiction over him is based upon this part.").
[28] *Id.* § 78B-3-201(3).
[29] *Cf. XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 ("Utah's long-arm statute . . . confers jurisdiction 'to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution" and therefore "[t]he two-step analysis thus collapses here into a single due-process inquiry.").
[30] *XMission*, 955 F.3d at 840; *accord Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017).
[31] *Bristol-Myers*, 582 U.S. at 262.

5

proper only if the defendant is "essentially at home" in the forum state.[32] Rayware does not invoke general jurisdiction in this case.[33] By contrast, specific jurisdiction permits a court to hear only those claims that arise out of or relate to the defendant's contacts with the forum.[34] Thus, specific jurisdiction requires that the defendant have "minimum contacts" with the forum state and that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[35]

Minimum contacts exist when "there [is] some act by which [a] defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[36] This "requirement ensures that a defendant will not be hailed into a jurisdiction as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'"[37] And as noted above, the minimum contacts analysis requires that the suit arise from the contacts.[38] Thus, "[i]n judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'"[39] NCB argues that the purposeful availment requirement is not satisfied.[40] Rayware makes two arguments that NCB has purposefully directed its activities at Utah: first, because

---

[32] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).
[33] *Cf.* Pl.'s Opp'n 6–20 (arguing only that specific jurisdiction is proper).
[34] *Bristol-Myers*, 582 U.S. at 262.
[35] *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1941)); *accord World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980); *see also* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.2 (4th ed., April 2023 Update).
[36] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also World-Wide Volkswagen*, 444 U.S. at 297 (suggesting minimum contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there").
[37] *Burger King*, 471 U.S. at 475 (citations omitted) (quoting *Keeton v. Husler Mag., Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299; *Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408, 417 (1984)).
[38] *See Bristol-Myers*, 582 U.S. at 262.
[39] *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).
[40] Def.'s Mot. 10–11.

NCB operates a website accessible from Utah and, second, because at least one of NCB's allegedly infringing products has been sold to a Utahn and shipped to Utah.[41]

### 1. Purposeful Availment

The Tenth Circuit has engaged with the purposeful availment requirement in the context of internet activities a handful of times.[42] And while neither of its two most recent opinions—*XMission* and *Shrader*—engage with the precise question at issue here—whether merely offering an item for sale on a generally accessible website subjects the owner to personal jurisdiction in every state from which the site may be accessed—both undermine Rayware's argument. In both cases, the Tenth Circuit cautioned that personal jurisdiction would be rendered meaningless if simply placing information on the internet could be considered purposeful availment of all those places from which the information may be viewed.[43] Thus, it instructed that courts should "examine whether the defendants 'deliberately directed its message at an audience in the forum state[.]"[44] Or put another way, in order to subject oneself to personal jurisdiction in a given state, an internet user must intentionally direct its "activity or operation at the forum state rather than just having the activity or operation accessible there."[45]

These decisions suggest that internet activity alone does not satisfy the purposeful direction prong of the minimum contacts test even when effects of that activity are felt in the

---

[41] Pl.'s Opp'n 7–17.
[42] *See XMission*, 955 F.3d 833; *Shrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011); *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244 (10th Cir. 2000); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008).
[43] *XMission*, 955 F.3d at 844–45 (quoting *Shrader*, 633 F.3d at 1240); *see also* 4A Wright & Miller, *supra* note 35, at § 1073 ("[T]he mere maintenance of a website that can be reached by residents of the forum state will not be sufficient to satisfy the purposeful availment of the specific personal jurisdiction test.").
[44] *XMission*, 955 F.3d at 845 (quoting *Shrader*, 633 F.3d at 1241).
[45] *Shrader*, 633 F.3d at 1240.

forum state; instead, evidence that the defendant actually intended to do business or target the forum state are required. And there is no such evidence here. While the Amended Complaint alleges that NCB operates a generally accessible website that could, in theory, lead to deliveries in Utah that is not enough.[46]

Rayware suggests that *Shrader* and *XMission* are factually distinguishable, and that the court should instead be persuaded by a variety of district court opinions pre-dating those cases. And while it is true that neither case is factually apposite in that neither involved sales made via the internet, that they are factually distinguishable does not deprive them of their force in this case.

Rayware cites to a number of district court opinions for the proposition that personal jurisdiction is proper over an interactive website that sells products in the forum state, even when there is no evidence of actual sales in the forum state.[47] For instance, in *A.L. Enterprises, Inc. v. Sebron*, the court found that personal jurisdiction was proper over the owner of two "highly commercial" websites, solely on the basis that the websites offered to sell products into Utah.[48] But *Sebron* and the other cases cited by Rayware either predate or do not engage with *Shrader* and *XMission*. *Solely* operating a website from which sales *could* be made in Utah is not sufficient to constitute purposeful availment. Indeed, this conclusion is in accord with decisions from this court following *Shrader* and *XMission*.[49]

---

[46] *See infra* pp. 8–10.
[47] *See* Pl.'s Opp'n 10–16 (discussing *A.L. Enters., Inc. v. Sebron*, No. 2:08-cv-536, 2008 WL 4356958 (D. Utah Sept. 17, 2008; *Zing Bros. LLC v. Bevstar, LLC*, No. 2:21-cv-00337-DN, 2011 WL 4901321 (D. Utah Oct. 14, 2011); *Neck Hammock, Inc. v. Danezen.com*, No. 2:20-cv-287, 2020 WL 9601834 (D. Utah May 5, 2020)).
[48] *Sebron*, 2008 WL 4356958, at *2.
[49] *See FITn40, LLC v. Glanbia Nutritionals (Ir.) Ltd.*, No. 2:20-cv-00871-JNP-DAO, 2022 WL 79910, at *4–7 (D. Utah Jan. 7, 2022); *Stonebrook Jewelry, LLC v. Revolution Jewelry Works, Inc.*, --- F.Supp.3d ---, 2023 WL 5279771, at *3–4 (D. Utah Aug. 15, 2023).

Therefore, the question here is then whether the sale of at least one of NCB's allegedly infringing products in Utah changes the analysis. On the facts of this case, the court concludes that it is insufficient because the only evidence of a sale in Utah comes after the filing of the Amended Complaint. Accordingly, the court does not address the question of whether a single sale made to a resident of the forum state via a generally accessible website would be sufficient for the minimum contacts analysis.

The Tenth Circuit has directed that district courts "must determine the jurisdictional facts as they were when the complaint is filed[.]"[50] Rayware's Amended Complaint alleges only that "upon information and belief" NCB "has delivered, and continues to deliver" allegedly infringing products "to consumers within the state of Utah."[51] But NCB rebuts this "upon information and belief" allegation with a declaration from its CEO that as of August 22, 2023, no sales of an allegedly infringing product had "involved a Utah resident or business."[52] Rayware seeks to cast doubt on the validity of this declaration through evidence that one of its attorneys' employees purchased an allegedly infringing product in Utah on October 10, 2023—after the Amended Complaint was filed.[53] NCB then submitted a second declaration from its CEO that suggests that as of the date of the filing of the Amended Complaint, it had not sold any allegedly infringing product to "a Utah resident or business."[54] The upshot of all this is that the only evidence of any sale to a Utah resident or delivery of an allegedly infringing product in Utah

---

[50] *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006); *see also Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F.Supp.3d 1343, 1356–57 (D. Colo. 2014).
[51] Am. Compl. ¶ 23.
[52] 1st Lovern Decl. ¶ 6.
[53] *See* Briggs Decl. ¶ 2.
[54] 2nd Lovern Decl. ¶ 6. And while Rayware objects to this declaration, *see* Objection to New Evidence in Defendant's Reply 3–4, ECF No. 19, the court finds that the evidence presented in this declaration was itself necessitated by the evidence submitted in Rayware's opposition. Accordingly, its consideration is proper.

comes after the filing of the Amended Complaint. This is insufficient to sustain a prima facie showing that Defendant has purposefully availed itself of Utah.

### 2. Arise out of or Relate to Contacts

Even assuming purposeful availment, Rayware faces another issue in establishing personal jurisdiction. The suit must "arise out of or relate to" NCB's contacts with the forum.[55] "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."[56] And on this issue, the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*[57] is illustrative. There, plaintiffs—who consisted both of residents of California and residents of 33 other states—sued Bristol Myers Squibb Company ("BMS") in California for injuries based on a drug, Plavix, sold by BMS.[58] "BMS did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California."[59] However, it did sell a substantial amount of Plavix in California: "Between 2006 and 2012, [BMS] sold almost 187 million Plavix pills in the State and took in more than $900 million from those sales. This amount[ed] to a little over 1 percent of the company's nationwide sales revenue."[60] And "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California."[61] This meant that

---

[55] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers*, 582 U.S. at 262).
[56] *Id.* at 362.
[57] 582 U.S. 255 (2017).
[58] *Id.* at 258–59.
[59] *Id.* at 259.
[60] *Id.*
[61] *Id.* at 264.

10

as between the nonresidents and BMS, there was no "connection between the forum and the specific claims at issue."[62] Accordingly, the court held that there was no personal jurisdiction over BMS for the claims stemming from nonresident plaintiffs.[63]

In this case, Rayware's claim simply does not depend upon any activity that occurred in Utah, nor does any harm stemming from the sales of allegedly infringing products occur in Utah. Rayware does not allege that it has a Utah market that is harmed by NCB's alleged wrongful activities, nor does Rayware have a principal place of business in Utah. At most, Rayware alleges that NCB's website, "which advertises products using the [TYPHOON trademark], is accessible to Utah residents" and permits them to purchase allegedly infringing products.[64] If merely advertising a product for sale were enough, then in *Bristol-Myers*, BMS would have been susceptible to suit in California, even for those claims from nonresidents that did not allege any California activity. Thus, as in *Bristol-Myers*, there is not a sufficiently substantial connection to Utah to support a finding that there is personal jurisdiction.[65]

Accordingly, because Rayware has failed to make a prima facie showing on either the purposeful availment element, or the relatedness requirement, the court finds that it lacks personal jurisdiction over NCB.[66]

---

[62] *Id.* at 265.
[63] *Id.* at 268–69.
[64] Am. Compl. ¶¶ 23, 24.
[65] NCB and Rayware also debate the importance of Rayware's selection of Utah counsel. A party's choice of counsel cannot create personal jurisdiction, nor does it affect venue.
[66] NCB's motion seeks transfer to the N.D. Georgia in the alternative. Def. Mot. 1 ("Alternative Motion to Transfer"); *id.* at 17 (arguing the court should "alternatively transfer the case to the Northern District of Georgia"). Raymore opposes transfer. NCB's reply abandons the issue. Because the motion to dismiss is granted and, in any event, NCB abandoned the venue transfer issue, the court does not discuss it further, except to note that neither party meaningfully discusses the required factors under 28 U.S.C. § 1631. *Cf. Trujillo v. Williams*, 465 F.3d 1210, 1223 n.16 (10th Cir. 2006).

## ORDER

For the reasons set forth above, the court GRANTS IN PART NCB's motion and DISMISSES the case without prejudice for lack of personal jurisdiction.

Signed April 24, 2024.

BY THE COURT

_____
David Barlow
United States District Judge